UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| DAVID A. SAWICKI, | ) | |
| | ) | Case No. 1:07CV0803 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | JUDGE CHRISTOPHER BOYKO |
| | ) | (Magistrate Judge Mchargh) |
| CITY OF BRUNSWICK POLICE | ) | |
| DEP'T., et al., | ) | |
| | ) | |
| Defendants. | ) | REPORT AND |
| | ) | RECOMMENDATION |
| | ) | |

McHARGH, Mag.J.

The David Sawicki ("Sawicki") filed an action pro se under 42 U.S.C. § 1983 against the City of Brunswick Police Department, its former chief, and various individual police officers.  (Doc. 1, 6.)  Sawicki also filed an "amended complaint," which the court construes as a supplemental pleading.  (Doc. 9, at 1; doc. 6.)  The court has dismissed the claims against the City of Brunswick, the Brunswick Police Department, former chief Dale Kozlik, acting chief Carl DeForest, and Officer Robert Marok.  The remaining individual defendants are Brunswick Police Officers Jeffrey Jones, Jon Page, Robert Safran, Clifford Smith, and Dale Schnell.  (Doc. 9.)

The factual circumstances of the case are set forth in the court's Memorandum of Opinion and Order of July 5, 2007.  (Doc. 9.)  In summary, Sawicki alleges that excessive force was used in his arrest and during his subsequent jailing.  (See generally doc. 1, 6, 9.)  The remaining defendants have filed a motion for summary judgment, based on the doctrine of qualified immunity.  (Doc. 34.) Sawicki has filed a cross-motion for summary judgment, and an opposition to the defendants' motion.  (Doc. 40, 41, 42.)

## I.  SUMMARY JUDGMENT

Summary judgment is appropriate where the entire record "shows that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  Non-moving parties may rest neither upon the mere allegations of their pleadings nor upon general allegations that issues of fact may exist.  See Bryant v. Commonwealth of Kentucky, 490 F.2d 1273, 1275 (6th Cir. 1974).  The Supreme Court has held that:

> . . . Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.

Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  The evidence need not be in a form admissible at trial in order to avoid summary judgment, but Rule 56(e) requires the opposing party:

to go beyond the pleadings and by [his] own affidavits, or by the "depositions, answers to interrogatories, and admissions on file," designate "specific facts showing that there is a genuine issue for trial."

Id. at 324.

The Sixth Circuit in Street v. J.C. Bradford & Co., 886 F.2d 1472 (6th Cir. 1989), has interpreted Celotex and two related cases, Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986), and Matsushita Electric Industrial Co., Ltd. v. Zenith Radio, 475 U.S. 574 (1986), as establishing a "new era" of favorable regard for summary judgment motions. Street points out that the movant has the initial burden of showing "the absence of a genuine issue of material fact" as to an essential element of the non-movant's case. This burden may be met by pointing out to the court that the respondent, having had sufficient opportunity for discovery, has no evidence to support an essential element of his or her case. Street, 886 F.2d at 1479.

The respondent cannot rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact, but must "present affirmative evidence in order to defeat a properly supported motion for summary judgment." Id. In ruling on a motion for summary judgment, the court must construe the evidence, as well as any inferences to be drawn from it, in the light most favorable to the party opposing the motion. Kraus v. Sobel Corrugated Containers, Inc., 915 F.2d 227, 229 (6th Cir. 1990).

Because Sawicki would have the burden of proof at trial, he has the burden of affirmatively showing the absence of a genuine issue of material fact in order to

3

prevail on his cross-motion for summary judgment.  Sawicki must present evidence
that would entitle him to a directed verdict if that evidence were not controverted at
trial.  If the defendants respond to Sawicki's motion with controverting evidence
which demonstrates a genuine issue of material fact, his motion must be denied.
However, if, after analyzing the combined body of evidence presented by both
parties, the evidence is such that no reasonable jury could find in favor of the
defendants, then summary judgment will be entered on behalf of Sawicki.
Fitzpatrick v. City of Atlanta, 2 F.3d 1112, 1115 (11th Cir. 1993); Fontenot v.
Upjohn Co., 780 F.2d 1190, 1194 (5th Cir.1986) (movant must establish all essential
elements of claim or defense); McGrath v. City of Philadelphia, 864 F.Supp. 466,
473 (E.D. Pa. 1994) (citing National State Bank v. Federal Reserve Bank of N.Y.,
979 F.2d 1579, 1582 (3d Cir. 1992)).

The pleadings of a petition drafted by a pro se litigant are held to less
stringent standards than formal pleadings drafted by lawyers, and will be liberally
construed.  Urbina v. Thoms, 270 F.3d 292, 295 (6th Cir. 2001) (citing Cruz v. Beto,
405 U.S. 319 (1972); Haines v. Kerner, 404 U.S. 519 (1972) (per curiam)).  Other
than that, no special treatment is afforded litigants who decide to proceed pro se.
McNeil v. United States, 508 U.S. 106, 113 (1993) (strict adherence to procedural
requirements); Jourdan v. Jabe, 951 F.2d 108 (6th Cir. 1991); Brock v. Hendershott,
840 F.2d 339, 343 (6th Cir. 1988).

4

## II.  SECTION 1983

To prove a claim under 42 U.S.C. § 1983, the plaintiff must identify a right secured by the Constitution or laws of the United States, and the deprivation of that right by a person acting under color of state law.  Searcy v. City of Dayton, 38 F.3d 282, 286 (6th Cir. 1994).  The threshold question, therefore, is whether the defendant deprived the plaintiff of a right secured by the Constitution or laws of the United States.  Kallstrom v. City of Columbus, 136 F.3d 1055, 1060 (6th Cir. 1998).

Sawicki alleges several constitutional violations.  First, he alleges that excessive force was used in his arrest, in that Officer Jones used a taser to subdue him.  (Doc. 1, at ¶¶ 14, 36.)  He also claims that excessive force was used by Officer Safran while he was being transferred from one cell to another at the jail.  Id. at ¶¶ 18, 39.  Sawicki alleges that Jones also used excessive force by threatening him with a weapon while he was being transferred into a police vehicle at the sally port.  Id. at ¶¶ 21-22, 36.

In addition, Sawicki alleges constitutional violations because he claims that Sgt. Page and Officer Jones did not prevent Safran from assaulting him during the cell transfer, id. at ¶ 19-20, 37, and Safran, Page, and Schnell did not prevent Jones from drawing his weapon in the sally port, id. at ¶¶ 23-25, 37-38.

Sawicki also alleges that proper medical treatment was denied to him while he was in custody, by Page, Safran and Jones, in violation of the Eighth

5

Amendment.  Id. at ¶¶ 15-16.  In addition, he alleges that Officer Smith tampered

with the evidence at the scene of his arrest.  Id. at ¶ 7.


### III.  DOCTRINE OF QUALIFIED IMMUNITY

The defendant officers have invoked the doctrine of qualified immunity in

their motion for summary judgment.  (Doc. 34, at 10-18.)

The issue of qualified immunity must be addressed at the earlier possible

point in the litigation.  Saucier v. Katz, 533 U.S. 194, 200-201 (2001); Siegert v.

Gilley, 500 U.S. 226, 232 (1991).  The Supreme Court has stated that, "[u]ntil this

threshold immunity question is resolved, discovery should not be allowed. " Harlow

v. Fitzgerald, 457 U.S. 800, 818-819 (1982).  The Court has clarified that the

inquiry regarding qualified immunity is distinct from the merits of the excessive

force claim itself.  Saucier, 533 U.S. at 204; Dunigan v. Noble, 390 F.3d 486, 491 n.5

(6th Cir. 2004).

A government official who is performing a discretionary function is entitled to

qualified immunity from suit[1] as long as his conduct does not violate "clearly

established statutory or constitutional rights of which a reasonable person would

have known."  Painter v. Robertson, 185 F.3d 557, 567 (6th Cir. 1999) (quoting

Harlow, 457 U.S. at 818).  In other words, any "objectively reasonable" action by a

state officer, as assessed in the light of clearly established law at the time of the

---

[1]Qualified immunity is an immunity from suit, rather than a mere defense to
liability.  Saucier, 533 U.S. at 200; Dunigan, 390 F.3d at 490.

6

conduct at issue, will be protected by qualified immunity.  Painter, 185 F.3d at 567.
Qualified immunity is a purely legal question which must be determined early in
the proceedings.  Saucier, 533 U.S. at 200; Siegert, 500 U.S. at 232.

The defendants bear the initial burden of coming forward with facts which
suggest that they were acting within the scope of their discretionary authority at
the time in question.  Rich v. City of Mayfield Heights, 955 F.2d 1092, 1095 (6th
Cir. 1992).  (The defendants here have met their initial burden:  it is uncontested
that the police officers were acting in their official capacities.)

The burden then shifts to the plaintiff.  The ultimate burden of proof is on the
plaintiff to show that the defendants are not entitled to qualified immunity.
Untalan v. City of Lorain, 430 F.3d 312, 314 (6th Cir. 2005); Cartwright v. City of
Marine City, 336 F.3d 487, 490-491 (6th Cir. 2003) (citing Rich, 955 F.2d at 1095);
Hamilton v. Myers, 281 F.3d 520, 531 (6th Cir. 2002).  Upon the assertion of
qualified immunity, the plaintiff must put forward "specific, nonconclusory factual
allegations" that would defeat the immunity.  Siegert, 500 U.S. at 236 (Kennedy, J.,
concurring).

The Supreme Court directs that the plaintiff must establish two factors to
show that the defendants are not entitled to qualified immunity from suit: 1) that
the facts as alleged show a violation of a constitutional right, and 2) that the right
violated was clearly established.  Saucier, 533 U.S. at 201; Livermore v. Lubelan,
476 F.3d 397, 403 (6th Cir. 2007) (two-tiered inquiry); Griffith v. Coburn, 473 F.3d
650, 656 (6th Cir. 2007) (two-pronged inquiry); Smith v. Cupp, 430 F.3d 766, 773

(6th Cir. 2005); Dunigan, 390 F.3d at 491.  The threshold inquiry is this:  "Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?"  Saucier, 533 U.S. at 201.  If the allegations would establish no violation of a constitutional right, then it is unnecessary to inquire further.  Saucier, 533 U.S. at 201.

On the other hand, if the factual allegations favorably viewed show a violation, the next step is to determine whether the right was clearly established. This inquiry "must be undertaken in light of the specific context of the case, not as a general broad proposition."  Id.  The relevant inquiry in determining whether a right is clearly established is "whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted."  Brosseau v. Haugen, 543 U.S. 194, 199 (2004); Saucier, 533 U.S. at 202.  If the law does not put the officer on notice that his conduct would be clearly unlawful, summary judgment based on qualified immunity is appropriate.  Saucier, 533 U.S. at 201.

"In other words, where a constitutional violation exists, an officer's personal liability turns on the 'objective legal reasonableness' of the action in view of the circumstances the officer confronted assessed in light of 'clearly established' legal rules."  Dunigan, 390 F.3d at 491 (citing Saucier, 533 U.S. at 202; Anderson v. Creighton, 483 U.S. 635, 639 (1987)).

A.  Do Facts Alleged Show Officers' Conduct Violated Constitutional Right?

1.  Fourth Amendment Claims

Claims that officers used excessive force during an arrest are analyzed under the Fourth Amendment's "objective reasonableness" standard.  Brosseau, 543 U.S. at 197; Saucier, 533 U.S. at 204; Graham v. Connor, 490 U.S. 386, 394-95 (1989). Determining whether the officer's actions were objectively reasonable "requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest."  Graham, 490 U.S. at 396; Russo v. City of Cincinnati, 953 F.2d 1036, 1044 (6th Cir. 1992).  If the amount of force used to accomplish the arrest is objectively reasonable, then no constitutional violation occurred.  Michaels v. City of Vermillion, 539 F.Supp.2d 975, 983-984 (N.D. Ohio 2008) (citing Baker v. City of Hamilton, 471 F.3d 601, 606 (6th Cir. 2006)).

a.  Officer Jones

Sawicki alleges that Officer Jones used excessive force against him in two instances.  First, he alleges that excessive force was used in his arrest, in that Officer Jones used a taser to subdue him.  (Doc. 1, at ¶¶ 14, 36.)  Second, he claims that Jones also used excessive force by threatening him with "a weapon" while he was being transferred into a police vehicle at the sally port.[2] Id. at ¶¶ 21-22, 36.

---

[2] Sawicki devotes a large portion of his filings to this issue, contending that a video of the sally port exists, which he claims should bolster his version of events,

Regarding the initial confrontation with Officer Jones, Sawicki has provided two differing accounts, as set forth in the court's earlier Order:

> In the original complaint, Mr. Sawicki contends that Officer Jones pointed a gun at him and ordered him to "turn around and place your hands on top of your head and interlock your fingers." (Compl. at 4.) He indicates he complied with the request and felt something shoot him in the back. He claims he was in great pain and called out to another officer for help. He states that the officer told him not to move because there were probes in his back which needed to be removed. He claims he doesn't remember being handcuffed. He asked if he could smoke a cigarette and was given permission to do so.
>
> In the Amended Complaint, Mr. Sawicki cites passages from the police report concerning his arrest. In the report, the officer stated he drew his weapon and ordered Mr. Sawicki to get on the ground. Mr. Sawicki informed the officer that he was not armed but did not comply with the request. The officer then holstered his weapon and drew out his taser. He again requested that Mr. Sawicki get on the ground and advised him that he would be tasered if he did not comply. Mr. Sawicki asked what he had done and the officer advised him that he was under arrest. He was ordered once again to get on the ground. The officer contends that Mr. Sawicki then attempted to flee the scene for a second time. Officer Jones deployed his taser. The Officer stated that the probes struck Mr. Sawicki in the back and in the rib cage. Mr. Sawicki disputes that officer's recitation of the facts, but objects only to the descriptions of where the probes struck his body. He states that both probes hit him in the back, rather than in the back and in the ribs. Although he states that the report contains contradictions, he does not point them out or dispute any other facts set forth in the report. He uses the report to supplement his allegations in the original pleading concerning this encounter with Officer Jones. Mr. Sawicki was arrested and charged with domestic violence, resisting arrest, criminal damaging, criminal trespass, and obstructing official business.

---

e.g., that he was shackled and an officer pointed a gun at his head.  See doc. 40, at 4; doc. 41.  However, the court does not weigh the evidence at this stage, but takes the allegations of his complaint in the light most favorable to him.

Mr. Sawicki contends that Officer Jones used excessive force to apprehend him.  He alleges:

> Plaintiff was approximately 15 to 18 feet from Officer Jones at the scene.  According to Ohio Peace Officer's Training Academy, the perimeter of a police officer is 21 feet.  That is, an officer may upgrade his weapon once an individual is in this circumference.  Officer Jones already had the gun drawn, then skips the use of force continuum step, and withdraws the taser.  Hence violating the Brunswick Police Department's aggression response ala Use of Force revised (2002) . . .

 (Am. Compl. at 9-10.)

(Doc. 9, at 3.)

Sawicki alleges, in essence, that Jones' use of the taser to subdue him as a nonviolent arrestee violates the constitution.  He provides no case law in support of this proposition.

Police officers have an essential duty to arrest suspects, and the right to use some degree of physical coercion or threat to effectuate the arrest is necessarily involved.  Michaels, 539 F.Supp.2d at 984 (quoting Graham, 490 U.S. at 396).  The court will consider the facts and circumstances of this particular case, "including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest."  Graham, 490 U.S. at 396; Russo, 953 F.2d at 1044.

The severity of the crime:  The police had been called to the scene because Sawicki was allegedly assaulting his sister Denise Cooper and her boyfriend Thomas Trout with a baseball bat, and threatening to kill them.  The sister told the

11

responding officers that Sawicki was extremely intoxicated.  (Doc. 1, at ¶ 4; doc. 34-6, Smith aff.; doc. 34-3, Jones aff.)  Cooper and Trout subsequently pressed criminal charges against Sawicki for domestic violence and assault.

Whether Sawicki posed an immediate threat to the safety of the officers or others:  Cooper had asked Officer Jones to remain at the scene because she was afraid to be there alone, after Sawicki had allegedly assaulted her with a baseball bat and threatened to kill her.  Jones confronted Sawicki when he returned to the scene of the alleged assaults, and Jones attempted to arrest him. (Doc. 1, at ¶ 11; doc. 6, at ¶ 39; doc. 34-3, Jones aff.)

Whether Sawicki was actively resisting arrest or attempting to evade arrest: Sawicki contends that he had "turned around," and then felt the taser hit him in the back. (Doc. 1, at ¶ 12; doc. 6, at ¶ 39.)  Jones asserts that he repeatedly asked Sawicki to get on the ground, and Sawicki did not do so.  Jones does not contend that Sawicki was "actively resisting" arrest, but that he was attempting to evade arrest by turning and attempting to flee again.  (Doc. 34-3, Jones aff., at ¶ 7; doc. 6, at ¶ 39.)  Although Sawicki admits turning, he denies he was going to run.  However, Sawicki also cites witness statements of Cooper and Trout that he "turned to run again," or "went to run," which at a minimum supports Jones' impression that Sawicki intended to flee.  (Doc. 42, at [5], ¶¶ O, S.)

Considering the totality of the facts and circumstances, the court finds that Sawicki's one-time use of the taser to effectuate the arrest of a noncompliant suspect who had allegedly assaulted and menaced his sister and another with a

baseball bat, who had fled the scene, returned, and turned as if to flee again, does not constitute an unconstitutional use of excessive force.  See, e.g., Draper v. Reynolds, 369 F.3d 1270, 1278 (11th Cir. 2004) (single use of taser reasonably proportionate to need for force and did not inflict any serious injury; use of taser may well have prevented physical struggle and serious harm to either suspect or officer); Russo, 953 F.2d at 1044-1045 (initial use of taser "to subdue a potentially homicidal individual" did not constitute excessive force); RT v. Cincinnati Public Schools, No. 1:05CV605, 2006 WL 3833519 (S.D. Ohio Dec. 29, 2006) (single use). See generally Goebel v. Taser Intern., Inc., No. 5:07 CV 0027, 2007 WL 2713053, at *6 (N.D. Ohio Sept. 14, 2007) (purpose of nonlethal, temporarily incapacitating devices such as taser is to give police effective options short of lethal force to take custody of suspect who refuses to be lawfully arrested or detained).

The court finds the amount of force used to accomplish the arrest is objectively reasonable, thus no constitutional violation occurred.  Michaels, 539 F.Supp.2d at 983-984.

In the second instance, where Jones supposedly threatened Sawicki with a weapon, courts have found that threats alone are distinct from "an actual infringement of a constitutional right."  Macko v. Byron, 760 F.2d 95, 97 (6th Cir. 1985).  "A section 1983 claim only accrues when the threats or threatening conduct result in a constitutional deprivation."  Lamar v. Steele, 698 F.2d 1286, 1286 (5th Cir. 1983) (per curiam).  Even a threat which puts the plaintiff in fear for his life is

not actionable under Section 1983.  Emmons v. McLaughlin, 874 F.2d 351, 353 (6th Cir. 1989).

Sawicki has not established that his allegations constitute a constitutional violation.  Saucier, 533 U.S. at 201 (plaintiff must establish that facts as alleged show constitutional violation); Livermore, 476 F.3d at 403.

### b.  Officer Safran

Sawicki also claims that excessive force was used by Officer Safran while he was being transferred from one cell to another at the jail.  He states that Safran kicked him and smashed his face against the wall.  (Doc. 1, at ¶¶ 18, 39.)

Sawicki's supporting affidavits are inconsistent in his versions of who did what.  The officers contend that Sawicki was "extremely combative" while they were attempting to transfer him from one cell to another, and they had to use recourse to force necessary to accomplish the transfer.  See doc. 34-4, Safran aff., at ¶ 3; doc. 34-2, Page aff., at ¶¶ 5-7; doc. 34-3, Jones aff., at ¶ 9.  Safran states that Sawicki tried to pull away and had to be restrained against the wall by the officers to keep control of him.  In doing so, Safran admits that he "twice pressed [his] knee against [Sawicki's] common perional area."  (Doc. 34-4, Safran aff., at ¶ 3.)  Page says that Sawicki "had to be restrained against the wall" at one point during the transfer.  (Doc. 34-2, Page aff., at ¶ 7.)

In countering Page's version of events, Sawicki states that "Sgt. Page held [him] against the wall while Officer Safran kicked and smashed [his] face."  (Doc. 42, at [8].)  In countering Safran, Sawicki claims that Safran and Page "threw [him]

14

against the wall of the hallway, smashed [his] face against wall, while Safran commenced to kicking [him]." Id. at [9].

Nonetheless, in the context of qualified immunity, Sawicki's allegations that he was handcuffed and no threat to the officers (doc. 1, at ¶¶ 18-19), which the court must consider in the light most favorable to him, and that Officer Safran kicked him and "smashed" his face against the wall, would constitute an unprivileged battery if true. These allegations would constitute a constitutional violation.

### 2. Eighth Amendment Claim

The Supreme Court has found that "deliberate indifference" to the serious medical needs of a prisoner constitutes an unnecessary and wanton infliction of pain, proscribed by the Eighth Amendment. Estelle v. Gamble, 429 U.S. 97, 104 (1976). The Court made clear in Estelle that not every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment. Id. at 105. In order to state a cognizable claim, the prisoner must allege "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." Id. at 106.

The Eighth Amendment does not apply to pretrial detainees. Weaver v. Shadoan, 340 F.3d 398, 410 (6th Cir. 2003) (citing Roberts v. City of Troy, 773 F.2d 720, 723 (6th Cir. 1985)). However, the Due Process Clause of the Fourteenth Amendment provides pretrial detainees a right to adequate medical treatment that is  analogous to the Eighth Amendment rights of prisoners. Weaver, 340 F.3d at

15

410; Johnson v. Knotts, No. 3:05CV138, 2007 WL 2607478, at *7 (S.D. Ohio Sept. 5, 2007).

Every plaintiff claiming deliberate indifference to his serious medical needs must clear two high hurdles.  Dunigan ex rel. Nyman v. Winnebago County, 165 F.3d 587, 590 (7th Cir. 1999).  A constitutional claim for deliberate indifference requires a showing of both objective and subjective components.  Phillips v. Roane County, Tenn., ___ F.3d ___, 2008 WL 2852898, at *5 (6th Cir. July 25, 2008) (citing Farmer v. Brennan, 511 U.S. 825, 834 (1994)).

The objective component requires a plaintiff to show the existence of a "sufficiently serious" medical need.  Id.  A medical need is sufficiently serious if it is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention."  Lockett v. Suardini, 526 F.3d 866, 876 -877 (6th Cir. 2008) (quoting Blackmore v. Kalamazoo County, 390 F.3d 890, 897 (6th Cir. 2004)); Johnson, 2007 WL 2607478, at *7.  A condition is serious if the failure to treat the prisoner's condition could result in further significant injury, or the unnecessary and wanton infliction of pain.  Dunigan, 165 F.3d at 590-591.  See also Westlake v. Lucas, 537 F.2d 857, 860 (6th Cir. 1976) (undue suffering or threat of tangible residual injury).

Sawicki alleges that the handcuffs "were so tight that circulation was being cut-off," that he felt numbness and pain, and that the officers refused his requests to see a doctor.  (Doc. 1, at ¶ 15.)  Other than the discomfort and concern which the allegedly tight handcuffs caused him, Sawicki does not allege that any injury

16

resulted, or that any medical treatment was ultimately required.  See generally doc.1, at ¶¶ 15-16; doc. 6.  The allegations of Sawicki's complaint do not rise to the level of a serious medical need for purposes of finding a constitutional violation. See, e.g., Wesson v. Oglesby, 910 F.2d 278, 284 (5th Cir. 1990); Barber v. Travis, Civ. No. 07-3166, 2007 WL 3046647, at *6 (E.D. La. Oct. 15, 2007); Ruffino v. Gomez, No. 3:05-CV-1209, 2006 WL 3248570, at *7 (D.Conn. Nov. 8, 2006).

As to the subjective component, "the [officer] must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Lockett, 526 F.3d at 877 (6th Cir. 2008) (quoting Farmer, 511 U.S. at 837); Phillips, 2008 WL 2852898, at *5; Johnson, 2007 WL 2607478, at *7.  Because the court finds that the objective component has not been established, it cannot be inferred that the officers were aware of a substantial risk of serious harm.

The facts as alleged by Sawicki do not show the officers' conduct evidenced a deliberate indifference to a serious medical need, in violation of a constitutional right.  Sawicki has not established that his allegations constitute a constitutional violation.  Saucier, 533 U.S. at 201 (plaintiff must establish that facts as alleged show constitutional violation); Livermore, 476 F.3d at 403.

### 3.  Other allegations

Sawicki alleges that Sgt. Page and Jones did not prevent Safran from assaulting him during the cell transfer, doc. 1, at ¶ 19-20, 37, and Safran, Page, and

17

Schnell did not prevent Jones from drawing his weapon in the sally port, id. at ¶¶ 23-25, 37-38.

Whether the officer's failure to act is a constitutional violation "hinges on whether [they] had the opportunity and means to prevent the alleged use of excessive force." Michaels, 539 F.Supp.2d at 987 (N.D. Ohio 2008) (citing Turner, 119 F.3d at 429). If the officers "observed or had reason to know that excessive force would be or was being used, and (2) . . . had both the opportunity and the means to prevent the harm from occurring," they may be held liable for failing to protect Sawicki from the use of excessive force. Id. See also Ontha v. Rutherford County, Tenn., No. 05-6556, 2007 WL 776898 (6th Cir. Mar. 13, 2007). Under the second prong of this test, Sawicki must show that the officers "did more than play a passive role in the alleged violation or showed mere tacit approval of the goings on." Id. at 988 (quoting Bass v. Robinson, 167 F.3d 1041, 1048 (6th Cir. 1999)). The officers must have encouraged or condoned the actions. Id. Sawicki's allegations, instead, place the officers in a passive role.

Finally, Sawicki claims that Officer Smith tampered with the evidence at the scene of his arrest. (Doc. 1, at ¶ 7.) The basis for this allegation is unclear. According to the complaint, Smith reported that he found the baseball bat "in the rear of the apartment by the fence that plaintiff obsconded [sic] through." Id. at ¶ 6. Sawicki states that his sister testified that he gave the bat to his nephew Justin "which was inside the residence." Id. at ¶ 8. The fact that Sawicki gave the bat to his nephew at some time does not preclude its being near to the fence at the rear of

18

the building when the police arrived.  Sawicki's allegations regarding tampering with evidence are conclusory, and supported by no assertion that the bat was in fact elsewhere than where Smith claims he found it.

Sawicki has not established that his allegations constitute a constitutional violation.  Saucier, 533 U.S. at 201; Livermore, 476 F.3d at 403.

### B. Was the Right Allegedly Violated Clearly Established?

The court has found that, other than the allegation of excessive force against Officer Safran, Sawicki's allegations are insufficient to establish a violation of a constitutional right.  If the allegations establish no violation of a constitutional right, then it is unnecessary to inquire further, and the defendants are entitled to qualified immunity.  Saucier, 533 U.S. at 201.

As to Safran, the court finds that the right to be free from an unprivileged battery while handcuffed, and no threat to an officer, is clearly established, and it would be clear to a reasonable officer that his conduct was unlawful in such a situation.  See, e.g., McDowell v. Rogers, 863 F.2d 1302, 1307 (6th Cir. 1988) ("gratuitous use of force" on handcuffed suspect).

## IV.  SUMMARY AND RECOMMENDATION

The defendants' motion for summary judgment (doc. 34) should be GRANTED in part, and DENIED in part, as discussed above.

As to the cross-motion, Sawicki has failed to carry his burden to present evidence that would entitle him to a directed verdict, thus his motion for summary judgment (doc. 40) should be DENIED.


Dated:   Aug. 14, 2008                          /s/ Kenneth S. McHargh
                                             Kenneth S. McHargh
                                             United States Magistrate Judge

ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Courts within ten (10) days of receipt of this notice.  Failure to file objections within the specified time WAIVES the right to appeal the District Court's order.  See Thomas v. Arn, 474 U.S. 140 (1985); United States v. Walters, 638 F.2d 947 (6th Cir. 1981).